**CERES GULF and ESIS/INA,**
**Plaintiffs,**

v.

**Cleaster COOPER, Defendant,**

and

**DOL, Office of Workers' Compensation Programs, Department of Labor, Intervenor.**

**Civ. A. No. H–90–1722.**

United States District Court,
S.D. Texas.

Dec. 11, 1990.

Steven Lynn Roberts, Houston, Tex., for plaintiffs.

Carol B. Feinberg, Office of the Solicitor, Washington, D.C., for intervenor.

## MEMORANDUM ON RECOVERY OF EXCESS BENEFITS

HUGHES, District Judge.

### 1. *Introduction.*

Although the worker has not answered the complaint for recovery of benefits paid to him under the federal longshoreman's compensation plan, the employer was asked to answer the question of recoverability. Under the law, a employer who pays benefits that are later determined administratively not to have been due may recover them from the worker.

### 2. *Background.*

Cleaster Cooper claimed that he injured his right knee on December 3, 1984, while working as a longshoreman for Ceres Gulf, a stevedore. In response to Cooper's claim, in accordance with its obligations under the Longshore and Harbor Workers' Compensation Act, Ceres Gulf began paying medical and compensation benefits through its compensation carrier, ESIS/INA. 33 U.S.C. § 901 et seq. Medical expenses of $10,674.65 and compensation payments of $25,657.10 were paid to Cooper.

Ceres contested the claim administratively, asserting that an on the job injury never actually occurred. In February 1988, Cooper's claims were tried by a hearing officer. On June 30, 1988, the hearing officer found no work-related accident occurred that could have caused Cooper's impairment and denied Cooper's claim. In the administrative proceeding and expressly at the trial, the carrier continually requested reimbursement for all overpayments. 33 U.S.C. § 914(j). The hearing officer concluded that he lacked authority to order the reimbursement, and he denied reimbursement.

Cooper appealed this decision to the Benefits Review Board, and the carrier petitioned for review of the reimbursement claim. In its decision of April 30, 1990, the Benefits Review Board affirmed that Cooper had no compensable injury and that no compensation or medical benefits had been due him.

The Board held that the hearing officer had no authority to order reimbursement of the medical and compensation overpayments, reasoning that the Act only provided for reimbursement of advance compensation payments if installments of compensation remain unaccrued. The Board held that, because Cooper had not established a compensable injury, he was not entitled to further compensation, but because Ceres had not paid more compensation that had accrued to the date of the order, it could not recover overpayments of the past benefits.

In May 1990, Ceres demanded reimbursement from Cooper, but he never replied. Ceres sued Cooper for repayment. Although Cooper was served on June 13, he has not appeared, and Ceres moved for the entry of his default. Default was entered on October 16.

### 3. *Issues.*

Because Ceres paid Cooper benefits of $36,331.75 and because Cooper never established a compensable injury, Cooper has been overpaid that full amount. Ceres seeks an award of: (a) the overpayment; (b) interest on the overpayments under 28 U.S.C. § 1961; and (c) reasonable attorney's fees. 33 U.S.C. § 926. Ceres argues that, having never been entitled to the benefits he received while his claim was being contested, Cooper should be required to refund the benefits paid.

### 4. *Jurisdiction.*

This court has jurisdiction because this is a federal question, arising directly under a federal statutory compensation plan. 28 U.S.C. § 1331; 33 U.S.C. § 921(d). Extended administrative proceedings under the

Act culminated in a final order adjudicating the rights of the parties. That order determined that Cooper was not entitled to any benefits under the Act and that the hearing officer had no authority to order reimbursement under § 914(j) of the Act. Cooper did not, and indeed could not, challenge Ceres's claim about the overpayment. The remedy sought in this action is essentially to enforce the logical and natural consequences of an administrative order to effectuate the statutory plan.

The administrative determination that Cooper was overpaid is final and the amount of overpayment is undisputed. All that remains is enforcement of the Ceres' right to reimbursement. There are no issues here that require deference to the expertise of the administrative structure created by the Act. The agency, indeed, has disclaimed authority over the question, much less claimed expertise. Ceres has exhausted the administrative remedies.

### 5. *The Act.*

■ The Act has one section that addresses refunds of overpayments. It says:

> If the Employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due. § 914(j).

This right of recoupment is the only statutory reference to refunds. The question may then be rephrased as: Was it the purpose of the Act to make recoupment the exclusive remedy for an overpayment of benefits?

The statute refers to "advance payments" of compensation. The payments Ceres seeks to recover were not advances; the payments were current compensation as it accrued in response to Cooper's claim. Because no compensable injury actually existed, the payments were simply money received by Cooper, who is in the same position of other claimants who are paid by carriers before a final determination of the validity of a claim. *Shaw v. National County Mutual Fire Insurance Company,* 723 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1986, no writ) (Insurer entitled

to recover payment it made to insured who had signed a release from another insurer, from whom insured had also recovered.); *Benson v. Travelers Insurance Co.,* 464 S.W.2d 709 (Tex.Civ.App.—Dallas 1971, no writ) (Insurer entitled to recover overpayment of insured's auto collision claim where insured knew the amount was an overpayment.); *Hodges Food Stores, Inc. v. Gulf Insurance Co.,* 441 S.W.2d 309 (Tex.Civ.App.—Dallas 1979, no writ) (Insurer, which mistakenly overpaid insured, in mutual mistake, is not required to honor draft for the mistaken amount.); *Fisher v. Metropolitan Life Insurance Company,* 895 F.2d 1073, 1078 (5th Cir.1990) (ERISA plan may properly withhold benefits due in order to recoup earlier overpayments to a plan participant); *Provident Life & Accident Insurance Company v. Waller,* 906 F.2d 985, 993–94 (4th Cir.1990) (same); *Patti v. R.H. Macy & Company, Inc.,* 1987 WL 13278 (S.D.N.Y.1987) (same).

Also, Ceres would be punished to the extent of the prompt interim payment; prompt payment on a claim should be made to fulfill the Act's purpose in relieving workers of the concern for the costs of on the job injuries. Nothing in the policy behind the Act suggests that false claimants should be allowed to deplete the fund to the injury of their fellow workers who may need the share that is improperly obtained and never returned. Ceres was required by the Act to make payments to Cooper while the appeal was pending. The appeal was successful, and it determined that Cooper had not been entitled to any of the benefits he had received; neither, of course, was he entitled to future benefits.

If the statute were read to require Ceres to look only to non-existent future payments to recoup $36,500 in overpayments, this construction would encourage the false claimants, like Cooper, to appeal to prolong the unlawful drain on the carrier without an encouragement or an assistance to the proper claimants, who are the proper object of the law's solicitude. In allowing only recoupment, the Board requires disgorgement from claimants who merely over estimated their injury, but requires nothing of

those who are wholly malingerers. The goal of early, prompt payment cannot be extended to these counter-productive results. A similar conclusion has been reached by the United States District Court for the Western District of Washington in *Stevedoring Services of America, Inc. v. Edward Eggert*, 23 BRBS 25 (CRT) (October 24, 1989). That case involved similar facts and many of the same issues.

6. *Amounts.*

Ceres's original complaint requests reimbursement of all medical and compensation payments made to Cooper. Cooper was paid:

A. Medical benefits under § 7 of the Act of $10,674.65;

B. Compensation for temporary total disability from December 4, 1984, to March 17, 1985, of $5,942.84;

C. Compensation for temporary partial disability from March 22, 1985, to July 31, 1985, of $7,542.84; and

D. Compensation for permanent partial disability from October 18, 1985, to May 18, 1986, of $12,171.42.

These amounts total $36,331.75.

7. *Attorney's Fees.*

■ Ceres is entitled to recover reasonable attorney's fees. 33 U.S.C. § 926. When the 1988 order of the Benefit Review Board became final, there was no legitimate basis for Cooper to refuse to refund the payments to Ceres. This litigation should not have been necessary, and once brought, its continuation was without reason. Ceres shall submit a sworn fee request, which will be a post judgment issue.

8. *Conclusion.*

The integrity of the fund from which covered workers are to be paid takes precedence over the potential, marginal discouragement of workers from taking advance benefits for fear of an inability to refund them if the claim is ultimately denied.

The court will enter a judgment for Ceres Gulf and ESIS/INA against Cleaster Cooper for:

A. Compensation payments to Cooper or on his behalf after December 3, 1984, of $25,657.10;

B. Medical benefits paid to Cooper or on his behalf after December 3, 1984, of $10,674.65;

C. Prejudgment interest at 6%. 28 U.S.C. § 1961 (interest on overpayments of compensation runs from payment by Ceres); and

D. Ceres's reasonable attorney's fees and costs.