**TAYLOR–CALLAHAN–COLEMAN COUNTIES DISTRICT ADULT PROBATION DEPARTMENT, Plaintiff–Appellant,**

v.

**Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Defendant–Appellee.**

No. 91–1109.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1991.

954

Bettye S. Springer, Sheila B. Gladstone, Haynes & Boone, Fort Worth, Tex., for plaintiff-appellant.

Randell P. Means, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., Nathaniel I. Spiller, Sr. Appellate Atty., U.S. Dept. of Labor, Allen Feldman, Steven J. Mandel, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, JONES, Circuit Judge, and PARKER, District Court Judge.*

CLARK, Chief Judge:

## I.

The district court dismissed for lack of subject matter jurisdiction this action by Taylor–Callahan–Coleman Counties District Adult Probation Department (the District) seeking a declaratory judgment and injunctive relief against the United States Department of Labor (DOL). The District alleged that the DOL violated the Administrative Procedures Act, 5 U.S.C. § 501 et seq. (APA), and the Fifth Amendment to the United States Constitution when it allegedly promulgated rules interpreting the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (FLSA), without first adhering to the notice and comment requirements of the APA or the due process requirements of the United States Constitution. Since the DOL action complained of is not final agency action, we affirm the district court's order dismissing for lack of subject matter jurisdiction.

## II.

### A. Statutory Background

In 1940, the DOL promulgated regulations, 29 C.F.R. § 541, interpreting the exemptions to the overtime requirements of FLSA, contained in 29 U.S.C. § 213(a)(1). The exemptions applicable to this case are those covering executive, administrative, or professional employees.[1]

* Chief District Judge, of the Eastern District of Texas, sitting by designation.

1. FLSA exempts from the overtime and minimum wage requirements "(1) any employee em-

At the time the DOL adopted the regulations set out in note 1, they related solely to private sector employers. The FLSA did not apply to public employers. The 1974 amendments to FLSA, which first applied the statute to public employers, was declared unconstitutional by the Supreme Court in 1976. *See National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). During this two year period of FLSA application to public employers, the Wage and Hour Administrator issued an opinion letter advising the requesting party that the probation officers described in the request were exempt as administrative employees. DOL W.H.Op. Letter No. 1344, Oct. 8, 1974.

In 1985, the Supreme Court reversed its opinion in *National League,* and declared that FLSA was applicable to public employers. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The District, in reliance on the 1974 opinion letter, treated its probation officers as exempt employees under FLSA.

In 1988, the DOL issued two opinion letters in response to new requests in which the Administrator stated that under the fact circumstances provided by the requesting parties, those probation officers were not exempt as administrative, executive or professional employees. *See* DOL W.H. Op. Letter (no number assigned), February 16, 1988; DOL W.H.Op. Letter No. 1670, April 12, 1988.

## B. The District

In 1988, an investigation by the regional office of the Wage and Hour Division concluded that $51,600 was due to 50 employees of the District for overtime compensation under FLSA. The investigation covered the period from January 1987 to December 1988. A letter from the regional director notified the District that if the District did not come into compliance within thirty days he would refer the case to the regional solicitor for consideration of legal action.

The District refused to pay back overtime assessed for the probation officers and their supervisors [hereinafter probation officers] but agreed to pay back overtime to the other employees. The District also agreed to pay overtime from that time forward to probation officers and all other employees covered by the DOL's letter. However, it reiterated its belief that the probation officers were exempt under FLSA. The DOL responded to this concession by the District in a letter stating:

> You advise that your client has come into compliance with respect to all employees involved in the issues in this case.

*    *      *      *      *      *

> We accept your client's offer as a basis for resolving the issues in this case. We will, however, notify the Probation Officers and their supervisors of their rights to a private action.

Letter from Carl H. Bass, Director of Enforcement, Wage Hour Division to Sheila Gladstone, attorney for the District (Feb. 16, 1990).

In compliance with its agreement, the District now treats the probation officers as nonexempt employees, and declares that it will continue to do so until a judicial resolution of this issue.

ployed in a bona fide executive, administrative or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 213(a)(1).

An executive employee is one (1) who is paid not less than $250 per week; (2) whose primary duties are management; and (3) who customarily and regularly directs the work of two or more employees. 29 C.F.R. § 541.1 (1990).

An administrative employee is one (1) who is paid not less than $250 per week; (2) whose primary duties consists of nonmanual work related to the management policies or general business operations of his employer; and (3) whose work requires the exercise of discretion and independent judgment. 29 C.F.R. § 541.2 (1990).

A professional employee is one (1) who is paid not less than $250 per week; (2) whose primary duties require knowledge of an advance type in a field of science or learning acquired by advanced education; and (3) whose work requires the consistent exercise of discretion and judgment, or requires invention, imagination or talent in a recognized field of artistic endeavor. 29 C.F.R. § 541.3 (1990).

## C. Proceedings

In its First Amended Complaint, the District requested the court to (1) declare that the District does not have to treat its probation officers as nonexempt employees under FLSA, (2) find that the DOL violated the APA and due process by changing its position on the exempt status of probation officers without notice and comment, (3) order the DOL to rescind the 1988 opinion letters stating that probation officers are not exempt employes, and (4) enjoin the DOL from acting in accord with these opinion letters or issuing further opinion letters on this issue prior to a formal rulemaking procedure.

The District alleged that the DOL violated the APA and the Fifth Amendment by promulgating rules and changing its interpretation and enforcement of FLSA without the notice and comment procedures required by the APA. The DOL moved to dismiss the first amended complaint for lack of subject matter jurisdiction, for failure to exhaust administrative remedies, and because the suit was barred by the doctrine of sovereign immunity. The district court granted the DOL's motion to dismiss for lack of subject matter jurisdiction. The District filed a timely notice of appeal.

## III.

■ Federal courts are courts of limited jurisdiction. The right to challenge jurisdiction cannot be waived. Although the district court did not state the reasons for its decision, the issue of subject matter jurisdiction is subject to plenary review by this court. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 428 n. 3 (5th Cir.1989).

■ In its first amended complaint, the District alleged jurisdiction under the Fifth Amendment of the United States Constitution, the APA, 5 U.S.C. §§ 702–03, and FLSA, 29 U.S.C. § 201 et seq. None of these authorities confer jurisdiction. The District's failure to cite a specific jurisdictional grant in its complaint does not defeat jurisdiction. *See Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980). The District here asserts that this action arises under the Fifth Amendment and the APA, and that jurisdiction is conferred by 28 U.S.C. § 1331 which grants district courts jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."

■ The District must also establish a waiver of sovereign immunity before relief can be granted. In this case, a waiver must be found in the APA. That Act does not make every agency action subject to judicial review. *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985) (citing 5 U.S.C. §§ 701–706). Section 704 of that Act limits judicial review to "[a]gency action made reviewable by statute and [to] final agency action for which there is no adequate remedy in a court...." 5 U.S.C. § 704. Our determination that the opinion letters are not final agency action and that the District is not without an adequate remedy affirm there was no jurisdiction in the district court and the defendant was immune.

## A. The 1989 Investigation

The District does not allege that the DOL acted improperly in agreeing to settle the 1989 investigation of the District's overtime policy. Although the District contends that the DOL will forgo enforcement only if the District remains in compliance with FLSA, no such threat has been made by DOL. It has only acquiesced in action promised by the District and stated it would advise the probation officers involved that they may act as individuals. This acquiescence and advice is not final agency action contemplated by the APA. The District's agreement to treat probation officers as nonexempt employees for future overtime payment does not make it so.

Rather than focusing on the investigation and settlement, the District asserts the DOL treats its 1988 opinion letters as binding precedent for all parties and that this treatment makes those particular letters final agency action.

## B. The Opinion Letters

The crux of the District's argument is that the DOL changed its pre-*Garcia* position set out in a 1974 opinion letter by issuing the 1988 opinion letters in lieu of conducting a formal rulemaking after following the public notice and comment procedures required by the APA and Fifth Amendment due process. The District contends the 1988 opinion letters are final agency action because the DOL treats them as binding on all probation departments including the District. We disagree.

■ Precedent requires that we gauge the finality of agency action in a pragmatic way. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980); *Texas v. United States Dept. of Energy*, 764 F.2d 278, 282 (5th Cir.), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985).

■ We begin by noting the DOL has authoritatively addressed the function and finality which it will place on opinion letters.

> Advisory interpretations announced by the Administrator [of the Wage and Hour Division] serve only to indicate the construction of the law which will guide the Administrator in the performance of his administrative duties unless he is directed otherwise by the authoritative ruling of the courts, or unless *he shall subsequently decide that his prior interpretation is incorrect.*

Advisory interpretations announced by the Administrator, 29 C.F.R. § 775.1 (1990) (emphasis added). Opinion letters are rulings "made by an agency 'as a consequence of individual requests for rulings upon particular questions.'" 29 C.F.R. § 790.17(d) (1990).

Advisory opinions issued by the Wage and Hour Administrator are to guide the DOL in its operations. They are neither final nor binding on employers or employees. Rather they are expressly issued subject to change by the Administrator. The 1974 opinion letter was not final agency action which fixed the rights of probation officers. The 1988 opinion letters are not final agency action which fixed the rights of the District. After substantial legal changes had occurred in the area of public employment, the Administrator changed the opinions he had held previously. The 1974 letter was not issued after public notice and comment. The 1988 letters required no such procedure.

In an enforcement action, the Portal-to-Portal Pay Act, 29 U.S.C. § 251 et seq., allows the defense of good faith reliance on "any written administrative regulation, order, ruling, approval, or interpretation," of the DOL. 29 U.S.C. § 259. Such a defense is a bar to the enforcement action, even if the DOL were to later change its position announced in the administrative regulation, order, ruling, approval, or interpretation. 29 U.S.C. § 259(a). The regulations, however, explain that reliance on an opinion letter is not valid for any period after the Administrator has announced a change in policy. 29 C.F.R. § 790.17(h)–(i) (1990). Thus, opinion letters have only an interim function which is subject to amendment or withdrawal by the Administrator.

All of the letters involved here are expressly limited to the factual situation presented by the requesting party. "[Y]ou are advised that based on the job descriptions submitted, [the probation officers] would meet the conditions for exemption...." DOL W.H.Op. Letter No. 1344, Oct. 8, 1974. "Therefore, it is our opinion on the basis of the information you provide that the employees ... cannot qualify...." DOL W.H.Op. Letter No. 1670, April 12, 1988. "Therefore, it is our opinion on the basis of the information you provide, that the employees ... cannot qualify ..." DOL W.H.Op. Letter (no number assigned), February 16, 1988.

The District has not requested an opinion as to any part of its own situation. Instead, it claims that such a request would be futile because the policy of the Administrator is well defined in the two most recent opinion letters. This claim ignores their own contention that the Administrator decided to change his prior interpretation. If the 1974 and 1988 positions and conditions were identical and the legal situ-

ation was the same so that the Administrator did make a change, he is logically free to change again. Rather than constituting agency action which is definitive, broadly applicable and demanding of compliance by all employers of probation officers, the letters involved here state only that they respond to particularized inquiries. Since the opinions are intended to guide DOL officials in similar situations, they surely are carefully reasoned. Nevertheless it is the regulations, not the opinion letters, which fix rights.

■ In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court reviewed several factors it found to be significant in determining the finality of agency action. First, whether the challenged action is a definitive statement of the agency's position; second, whether the actions have the status of laws with penalties for noncompliance; third, whether the impact on the plaintiff is direct and immediate; and fourth, whether immediate compliance was expected. *Id.* at 150–152, 87 S.Ct. at 1516–1517. When the Supreme Court applied these four factors to a Federal Trade Commission (FTC) complaint based on its alleged "reason to believe" that a violation had occurred, it held the action unreviewable because it was not final agency action. *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). The FTC's "reason to believe" was merely a threshold determination and did not carry the force of law. *Id.* at 240–42, 101 S.Ct. at 493–94.

Similarly, the Ninth Circuit held that an interpretive letter sent by the Chief Counsel of the Federal Aviation Administration (FAA) was not final agency action because the letter was not a definitive statement of FAA policy nor did it have the status of law requiring specific action be taken by the recipient. *Air California v. United States Dept. of Transp.*, 654 F.2d 616, 619–20 (9th Cir.1981).

The District relies principally on two cases to support its contention that opinion letters are final agency action. Since both are distinguishable on their facts we need not determine here whether our construc-

tion of the effect of DOL opinion letters would conflict with these rulings. In the first, *National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689 (D.C.Cir.1971), the District of Columbia Circuit held that an opinion letter issued by the Administrator to an association stating that coin-operated launderettes and dry-cleaning services were "engaged in laundering or cleaning clothing or fabrics within the meaning of the act," *Id.* at 692, was agency action subject to judicial review. *Id.* at 702. The court found that the opinion letter constituted final agency action because it was in response to an *actual* situation and the Wage and Hour Division intended the letter to be a "deliberative determination of the agency's position at the highest available level on a question of importance ..." that affected an entire industry group. *Id.* at 701, 702. The court also decided that the ruling of the head of an agency is presumptively final, absent evidence on the face of the ruling that it is tentative. *Id.* The court also held that opinion letter rose to the level of "expected conformity" which applied to the businessman and agency personnel. *Id.* at 702.

*National Laundry* is distinguishable on several grounds. First, the opinion letter in that case was issued to the plaintiff whereas the opinion letters in this case were not issued to the District. Second, the addressee was a national trade association and its request was made and responded to on behalf of a significant portion of an industry, not simply some employees of one employer. Third, the opinion letter determined that *all* standardized coin-operated launderettes or dry-cleaning services were enterprises within the meaning of FLSA. The letter requesting the opinion set forth three typical fact situations prevailing in the coin-operated laundry business. The Administrator's opinion was that in all these situations the launderettes would be covered by FLSA. A wholly different situation confronts this court in today's case.

The opinion letters cited by the District did not have general applicability to machinery used by an industry, nor did they

create an expected conformity to be followed by other probation departments or by the DOL. Each of the letters was issued in response to a discreet inquiry by one employer or probation department with respect to its own described personnel operations.

The D.C. Circuit recognized that:

[t]o permit suits for declaratory judgment upon mere informal, advisory, administrative opinions might well discourage the practice of giving such opinions, with a net loss of far greater proportions to the average citizen than any possible gain which would accrue.

*Id.* at 699 (quoting *Helco Products Co. v. McNutt,* 137 F.2d 681, 683–84 (D.C.Cir. 1943)). That court also acknowledged the need for informal advisory letters in the administration of FLSA. *Id.* at 699.

The letters involved here were not a "deliberative determination of the agency's position at the highest available level on a question of importance." *Id.* at 701. They were no more than individualized advisory, administrative opinions, subject to modification or change.

The second case the District cites is *International Longshoremen's and Warehousemen's Union v. Meese,* 891 F.2d 1374 (9th Cir.1989). There the Ninth Circuit determined that an Immigration and Naturalization Service (INS) advisory opinion was final because the union had "no administrative remedy to overturn the advisory opinion or policy statement." *Id.* The court also found, however, that by acting through an advisory opinion, the INS deprived the union members of the protections afforded by the National Labor Relations Board certification procedure. *Id.* at 1379.

In *ILWU,* the court held the INS opinion letter stating that Kingcome's crane operators were "alien crewmen" was final because it resulted in the loss by union members of their opportunity to compete for jobs long considered traditional longshoremen positions, *id.,* but did not provide the union with any remedy. *Id.* at 1378. Such is not the situation with the opinion letters and the District. The DOL's opinion letters responding to the specific inquiries of other probation departments do not have such an effect on the District. It is still free to seek its own opinion letter and is free to challenge any opinion letter issued to it by continuing with treatment of its employees which it believes is correct.

The opinion letters involved in today's case are akin to threshold determinations. They give specific entities the Administrator's opinion as to how governing regulations affect the probation officers described in the request. They set out no definitive statement of DOL policy. They do not have the status of law with penalties for noncompliance. They do not have a direct or immediate impact on the District. They do not require immediate compliance by the District. They are not final agency action subject to judicial review.

### C. Declaratory Relief

■ The District asserts it had no adequate remedy other than this declaratory judgment action. This is incorrect. In a FLSA enforcement action, whether brought by probation officers or the DOL, the District may defend on the basis that the officers are exempt from coverage. *See* 29 U.S.C. §§ 213, 258–59. The District contends that this option is not viable because as a law enforcement agency it should not engage in civil disobedience. The District also asserts that if it ceases to pay overtime to its probation officers and an enforcement action ensues which it defends without success, the violation would be construed as willful because it is aware of the DOL's position regarding the District's probation officers. Our holding that the opinion letters are not final agency action which binds the District provides a substantial answer to these concerns. While we issue no advisory opinion on any question of willfulness which may later arise, we do hold that the answer to that question cannot turn on ascribing any binding force to the opinion letters.

### D. Rulemaking

■ The District contends that the DOL bypassed the APA rulemaking process by

issuing opinion letters and utilizing case-by-case enforcement actions against probation departments. At no time has the District petitioned the DOL for rulemaking, pursuant to 29 C.F.R. § 541.6 (1990) or 5 U.S.C. 553(e). The District says a petition by it would be futile because the DOL has received such petitions from large public employer groups, but has yet to propose a new rule. If the DOL had rejected a petition, this action would be final and subject to judicial review. *See WWHT, Inc. v. FCC,* 656 F.2d 807 (D.C.Cir.1981). But they have not. In 1985, the DOL published an advance notice of proposed rulemaking and received comments on the need to alter the duties, responsibilities and salary tests of 29 C.F.R. § 541.101. 50 Fed.Reg. 47,696 (1985), 51 Fed.Reg. 2,525 (1986). The DOL does not anticipate making a determination as to whether a new rulemaking procedure is warranted until March 1992. 56 Fed. Reg. 17,530 (1991) (DOL Semiannual Agenda of Regulations). The fact that rulemaking is proceeding at a pace too slow to suit the District in this matter does not make such bureaucratic sloth final agency action under the facts shown here.

The District's assertion that the DOL has impermissibly made final binding rules through opinion letters without allowing notice and comment which the rulemaking process provides is also answered by our ruling that the opinion letters are without binding effect on the District. The DOL followed no such notice and comment process in 1974 and was not required to do so when it issued the 1988 letters.

### IV.

The judgment of the district court dismissing the action for lack of jurisdiction is

AFFIRMED.

EDITH H. JONES, Circuit Judge, concurring:

Although I concur in the majority opinion, I am concerned that the Department of Labor's position, which has shifted with the tides of *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and *Garcia v. San Antonio*

*Metropolitan Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), abrogates any notion of federalism in a situation implicating "an integral operation in areas of traditional government function[ ]." *Garcia,* 469 U.S. at 530, 105 S.Ct. at 1007. Citing a perceived judicial inability to fashion parameters of "traditional governmental functions," *Garcia* declined to check the flexing of federal muscle in the domain of state and local government. *Id.* at 531, 105 S.Ct. at 1007. Federalism, the Court concluded, is adequately expressed in restraints exercised through elected federal political officials.

However, as the *Garcia* dissent noted, federal politicians possess "an underdeveloped capacity for self-restraint" in encroaching upon state sovereignty. *Id.* at 588, 105 S.Ct. at 1037 (O'Connor, J., dissenting). One need only consider the tenuous constitutional precipice upon which *Garcia v. San Antonio Metropolitan Transit Authority* rests, as well as notable changes in membership of the Court, to recognize that the Court may now be disposed to "again assume its constitutional responsibility." *Id.* at 589, 105 S.Ct. at 1037 (O'Connor, J., dissenting); *Id.* at 580, 105 S.Ct. at 1033 (Rehnquist, J., dissenting).

But even though we cannot now question the Department of Labor's position based directly on the Tenth Amendment, it remains worthwhile to observe in what a quandary these counties have been placed by the Department's chosen means of FLSA enforcement. The Department has not taken the straightforward path of rulemaking, which would have facilitated comment and negotiations between the federal and local sovereigns. Instead, it has chosen to use individual enforcement actions and interpretive letters that are non-binding on third parties, leaving both the scope and consistency of federal policy in doubt. The Department's method also raises the spectre that a non-complying probation department could be held liable for extra "willfulness" damages. *Compare Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562 (11th Cir.1991). This process mocks

federalism and disserves local taxpayers, who deserve to know the budget claims against their local governmental agencies. The Department should exercise its authority more judiciously against state and local governments.