# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 91-2097
_____

CERES GULF and ESIS/INA,

                                              Plaintiffs-Appellees,

                     versus

                     CLEASTER COOPER

                                                     Defendant,

                     DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS (U.S.
               Department of Labor),

                                     Intervenor-Appellant.

_____

### Appeal from the United States District Court
### for the Southern District of Texas
_____

(March 27, 1992)

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, and McBRYDE, District Judge.[1]

BARKSDALE, Circuit Judge:

Primarily at issue is subject matter jurisdiction *vel non* for an original action in district court against a former employee to recover advance payments made under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA), when additional LHWCA compensation is not owed the employee and the relief sought is not permitted, either procedurally or

---

[1] District Judge of the Northern District of Texas sitting by designation.

substantively, by the Act. After being denied such recovery in LHWCA administrative proceedings, but without seeking review in a court of appeals as allowed by the Act, the employer and its compensation insurer filed this separate suit. Several months later, when a default judgment was being considered, the Director, Office of Workers' Compensation Programs, fortuitously became aware of this action and immediately sought to intervene, based on his authority as administrator of the LHWCA. This notwithstanding, the district court entered the judgment and later denied intervention. The Director bases error, *inter alia*, on the denial and lack of subject matter jurisdiction. We agree and **REVERSE** and **REMAND** with instructions.

I.

Ceres Gulf is a stevedoring company subject to the LHWCA; ESIS/INA, its worker's compensation insurer.[2] Almost immediately after Ceres Gulf employed Cooper, he claimed that he had been injured in the course of that employment and sought compensation and medical benefits under the LHWCA. Ceres Gulf did not promptly controvert Cooper's LHWCA claim; instead, over a period of almost 18 months, it made advance payments to him totalling approximately $36,000.[3]

---

[2]    Unless the context specifies otherwise, Ceres Gulf and ESIS/INA will be referred to collectively as Ceres Gulf.

[3]    If a claim is timely controverted as prescribed by the LHWCA, advance payments are not required. 33 U.S.C. § 914(a), (d) and (e).

2

Ceres Gulf did, however, contest the claim; and following a hearing, an Administrative Law Judge (ALJ) denied it, finding that a work injury had not occurred.[4] Concomitantly, the ALJ denied Ceres Gulf's request for reimbursement of the advance payments, ruling that "33 U.S.C. § 914(j) which is the only known authority for allowing reimbursement for overpayments applies only in cases where it is contemplated that additional [LHWCA] compensation will become due." Cooper and Ceres Gulf appealed to the Department of Labor Benefits Review Board (BRB); and it affirmed, holding in part:

> The [LHWCA] ... provides for reimbursement of advance compensation payments only if unpaid installments of compensation remain owing. Since the [ALJ] found that [Cooper] had failed to establish a compensable injury and, therefore, was not entitled to any further compensation, [Ceres Gulf] cannot receive reimbursement.

The LHWCA provides for review of the BRB ruling in the courts of appeals. Ceres Gulf did not utilize this next step in the statutory scheme. Instead, within a month of the BRB's ruling, it brought this separate action for reimbursement in district court, asserting that the remedy sought was "essentially one to enforce the provisions of an administrative order" and that jurisdiction existed under the general federal question statute, 28 U.S.C. § 1331, and "the equitable powers of the Court".

Cooper did not answer the complaint. Accordingly, the district court entered a default and "asked [Ceres Gulf] to answer

---

[4] The ALJ found that "the main reason for [Cooper's] hospitalization ... was his alcohol abuse not his alleged knee injury."

the question of recoverability."  *Ceres Gulf v. Cooper*, 756 F.
Supp. 303, 304 (S.D.Tex. 1990).  In its "Memorandum On Recovery of
Excess Benefits", and based upon its analysis of the statutory
framework, the district court held that it had jurisdiction and
that Ceres Gulf was entitled to recover.  In so holding, it cited
in support "a case involv[ing] similar facts and many of the same
issues", *Stevedoring Services of America, Inc. v. Eggert*, 23 Ben.
Rev. Bd. Serv. 25 (CRT) (W.D. Wash. Oct. 24, 1989).  756 F.Supp. at
306.  (As discussed *infra*, that decision has been recently reversed
by the Ninth Circuit.  953 F.2d 552 (9th Cir. 1992)).

The district court's opinion and final judgment were signed
(but the latter not entered) on December 11.  Pursuant to earlier
communication with the district court, the Director moved to
intervene of right on December 12, one day before entry of the
judgment; to set aside the default judgment; and to dismiss.
Subsequent to entry of the judgment on December 13, the district
court denied the motions.

II.

The Director timely appealed both the default judgment and the
order denying its motions.[5]  In addition to raising the
intervention issue, the Director asserts that the district court

---

[5]    "The denial of ... interven[tion] of right is
appealable...."  *Jones v. Caddo Parish Sch. Bd.*, 704 F.2d 206,
217-18 (5th Cir. 1983), *aff'd on reh'g*, 735 F.2d 923 (5th Cir.
1984) (en banc); *see, e.g.*, *Cajun Elec. Power Coop., Inc. v. Gulf
States Utils. Inc.*, 940 F.2d 117, 118-19 (5th Cir. 1991).

lacked subject matter jurisdiction.[6]  We opt to first address

intervention.[7]

A.

Intervention of right, unless conferred unconditionally by a

federal statute, Fed. R. Civ. P. 24(a)(1), is addressed in Rule

24(a)(2).  Rule 24(a) provides in part:

> Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See also* **New Orleans Public Serv., Inc. v. United Gas Pipe Line

Co.**, 732 F.2d 452, 463-64 (5th Cir.) (en banc), *cert. denied*, 469

U.S. 1019 (1984).  The district court denied intervention without

listing reasons.  Intervention of right rulings are reviewed *de

novo*.[8]  In so doing, we are cognizant that "`the inquiry under

---

[6]    The Director also contends that, assuming jurisdiction, the district court erred in holding that Ceres Gulf could recover.  Lack of jurisdiction renders this issue moot.

[7]    Even though subject matter jurisdiction, always a threshold matter, is in issue, we elect to first address the intervention issue, without deciding that one of the two issues must be addressed first in cases such as this, where (1) subject matter jurisdiction is not only a threshold issue, but is the central issue, and (2) the rights and role of the intervenor are inextricably tied to that issue.  *But cf.* **Gregory-Portland Indep. Sch. Dist. v. Texas Educ. Agency**, 576 F.2d 81, 83 n.1 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979); *see* **id.** at 83 (Godbold, J., concurring).

[8]    Normally, we review the district court's findings on timeliness under the abuse of discretion standard.  **Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.**, 831 F.2d 59, 62 (5th Cir. 1987).  Here, however, we can only review *de novo* its

5

[Rule 24](a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application'"; that "`intervention of right must be measured by a practical rather than technical yardstick.'" *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (citation omitted).

Timeliness is the first factor. Default was entered under Fed. R. Civ. P. 55(a) in mid-October 1990. The Director was not notified by Ceres Gulf of the pendency of this action; instead, he learned of it on November 28, 1990, when he saw it referenced in a reply brief in *Eggert*.[9] He contacted Ceres Gulf's counsel the next day to advise that he intended to intervene; by letter to the district court and counsel, filed the following day (November 30), he confirmed that intent, requested a stay, and enclosed a motion for leave to appear; and he received the pleadings and other court papers on December 3. By order signed on December 6 and entered on December 10, counsel for the Director was granted leave to appear; and on December 12, the motion to intervene was filed. The district court's opinion and the judgment had been signed, however, on December 11; the judgment was entered on December 13. Ceres Gulf concedes that the Director was not dilatory in seeking to

ultimate determination, because, as noted, it did not provide findings on the intervention factors.

[9] The Director participated in the *Eggert* appeal as *amicus curiae*, because he learned of the suit only after it had been appealed to the Ninth Circuit and briefs had been filed. Ceres Gulf urges that the Director can adequately represent his interest through *amicus* participation. As discussed *infra*, we reject this contention. Needless to say, had the Director not sought to intervene, there would not have been an appeal in which the Director could have participated, as *amicus* or otherwise.

intervene. Instead, it contests timeliness because the motion was filed after the judgment was signed, asserting that the efforts to set it aside are prejudicial to Ceres Gulf, because of the additional expense and delay incurred in seeking to satisfy its judgment. The prejudice to be considered in ruling on intervention of right, however, is that created by the intervenor's delay in seeking to intervene after it has learned of its interest in the action, not prejudice to existing parties if intervention is allowed. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). We have allowed post-judgment intervention in other cases. *E.g.*, *Thurman v. Federal Deposit Ins. Corp.*, 889 F.2d 1441, 1446 (5th Cir. 1989); *Baker v. Wade*, 769 F.2d 289, 292 (5th Cir. 1985) (en banc), *cert. denied*, 478 U.S. 1022 (1986). *See also Stallworth*, 558 F.2d at 266 (whether intervention motion filed before or after entry of final judgment is "of limited significance" as a measure of timeliness).

In *Stallworth*, this court established four timeliness factors, 558 F.2d at 264-66; their application supports finding the Director's motion timely. First, he knew of his interest in the case only a short time before he moved to intervene. Second, because he moved just after learning this action was pending, there was no prejudice to existing parties from delay in seeking to intervene. Third, the prejudice to the Director if he is not allowed to intervene to assert his jurisdictional arguments is significant. And fourth, the existence of a substantial question about the district court's jurisdiction -- a matter the Director is

7

uniquely qualified to address -- is a special factor that supports finding timeliness.

Pursuant to Rule 24(a)(2), we next determine whether the Director "claims an interest relating to the property or transaction which is the subject of the action and ... is so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest". Ceres Gulf contends that this action is outside the administrative process; that it "is not challenging the Director's jurisdiction or authority to administer the LHWCA"; that the "property" in issue is the compensation payments Cooper received; and that the Director has no "interest" in claimants being allowed to retain such "property" when obtained improperly.

We need not define Rule 24(a)(2) "property or transaction" so narrowly. *See New Orleans Public Serv.*, 732 F.2d at 463-64.[10] The Director's interest springs from his role in administering the LHWCA. The Secretary of Labor has delegated to him all functions with respect to its administration. 20 C.F.R. § 701.201, 701.202(a) (1991); *Ingalls Shipbuilding Div., Litton Sys., Inc. v. White*, 681 F.2d 275, 286 (5th Cir. 1982). Under the LHWCA and its regulations, the Director is vested with an important "watchdog" role "to ensure the fair and adequate compensation of injured employees." 681 F.2d at 287. Accordingly, the Director's interest

---

[10] *See also Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) ("in the intervention area the `interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").

is, among other things, consistent application of the LHWCA, a statutory scheme he is charged with administering. For example, in a 1977 report, the Senate Committee on Human Resources stated:

> In establishing the Longshore Act procedures it was the intent of this Committee to afford the Secretary the right to advance his views in the formal claims litigation context whether or not the Secretary had a direct financial interest in the outcome of the case. The Secretary's interest as the officer charged with the responsibility of carrying forth the interest of Congress with respect to the Act should be deemed sufficient to confer standing on the Secretary or such designee of the Secretary who has the responsibility for enforcement of the Act, to actively participate in the adjudication of claims before the Administrative Law Judge, Benefits Review Board, and appropriate United States Courts.

S.Rep. No. 95-209, 95th Cong., 1st Sess. 22 (1977) (quoted in *Ingalls*, 681 F.2d at 287).

*Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Association*, 646 F.2d 117 (4th Cir. 1981), concerned the denial of the National Labor Relations Board's motion to intervene (the district court had instead allowed amicus status) in an action by a shipbuilding company against a union, in which the company sought a judicial construction of the collective bargaining agreement. While the action was pending, the NLRB initiated an administrative proceeding against the company and union and moved to intervene in, and stay, the court action, pending the NLRB proceeding.

The Fourth Circuit reversed the denial of intervention, finding sufficient interest in the NLRB's "role as the primary tribunal for the adjudication of unfair labor practices and from

9

its statutory responsibility for preventing and remedying those practices." *Id*. at 120 (citations omitted).  It relied on the existence of common issues in the two proceedings and noted the NLRB's "legitimate interest ... in being able in the district court fairly to protect its jurisdictional claims". *Id.* at 121.  And, as in this case, "a substantial question of the district court's jurisdiction" existed.  *Id*.[11]  The Director seeks intervention for substantially the same reasons, including to exercise the administrative authority delegated to it under a statutory scheme and to protect his jurisdiction.

As for the last Rule 24(a)(2) factor, it is obvious that the Director's interest is not adequately represented by existing parties.  Cooper never appeared in the district court to represent his interests, much less the Director's.  And, Ceres Gulf's interest in bringing this action is directly opposed to the Director's concern for enforcing the statutory scheme.

We conclude that the district court erred in denying Rule 24(a)(2) intervention.  The Director's interest that justifies intervention is the protection of administrative jurisdiction over LHWCA claims.  In addition, denying intervention impairs, if not prevents, his ability to provide his interpretation of the law he

---

[11]     Similar reasoning has been followed in other cases where the NLRB was allowed to intervene under Rule 24 under analogous circumstances. *See* ***Bevona v. Field Bridge Assocs***., No. 90 Civ. 5191, 1991 WL 274467 (S.D.N.Y. Dec. 6, 1991); ***Pennsylvania Truck Lines v. Teamsters***, No. 88-6968, 134 L.R.R.M. 2223 (BNA) (E.D. Pa. May 14, 1990); ***International Bhd. of Boilermakers v. Combustion Eng'g, Inc.***, 337 F. Supp. 1349 (D. Conn. 1971); ***International Bhd. of Teamsters v. Ace Enters***., 332 F. Supp. 36 (S.D. Cal. 1971).

is charged with administering and would be harmful in allowing a precedent, reached without his input, on an important LHWCA related issue. Moreover, his interest is impaired by the *stare decisis* effect of the district court's judgment, which creates a new cause of action outside agency jurisdiction. *See **Nuesse v. Camp***, 385 F.2d 694, 702 (D.C. Cir. 1967).

## B.

Subject matter jurisdiction is a question of law; our review is plenary. *E.g.*, ***Taylor-Callahan-Coleman Counties Dist. Adult Probation Dept. v. Dole***, 948 F.2d 953, 956 (5th Cir. 1991). Needless to say, federal courts have limited jurisdiction. The district court held that it had "jurisdiction because this is a federal question, arising directly under a federal statutory compensation plan. 28 U.S.C. § 1331; [LHWCA,] 33 U.S.C. § 921(d)." 756 F.Supp. at 304. (As discussed *infra*, § 921(d) allows claimants and deputy commissioners, but not employers, to obtain district court enforcement of a compensation order making an award.)

In this case, subject matter jurisdiction can be viewed only against the backdrop of the LHWCA statutory scheme. The employer's liability under the LHWCA is "exclusive and in place of all other liability of such employer to the employee ...." 33 U.S.C. § 905(a). As with other worker's compensation schemes, "the LHWCA ... represents a compromise between the interests of injured workers, who receive a certain and immediate recovery, and the interests of employers and insurers, who in turn receive `definite and lower limits on potential liability than would have been

11

applicable in common-law tort actions for damages.'" *In re Claim for Compensation Under the Longshore & Harbor Workers Compensation Act*, 889 F.2d 626, 632 (5th Cir. 1989) (quoting *Potomac Elec. Power Co. v. Director, Office of Workers' Comp. Programs*, 449 U.S. 268, 281-82 (1980)), *cert. denied*, 494 U.S. 1082 (1990).

This immediate recovery is translated through § 914, which provides for prompt payment, unless the right to compensation is timely controverted by the employer, § 914(d).[12] "Thus, the scheme of the LHWCA is that the employer is absolutely required to pay compensation promptly on notice of injury and in the absence of a timely written controversion." *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 810 (5th Cir. 1988). The LHWCA provides for penalties of 10% for, among other things, failure to make timely advance (without an award) payments, unless a notice to controvert is timely filed, § 914(e), and 20% if an award is not timely paid, unless review is sought and payment of the award is stayed, § 914(f).

Here, rather than timely controvert, Ceres Gulf made advance payments to Cooper for approximately 18 months, until shortly

---

[12] Section 914(d) provides:

> If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

before he reached maximum medical improvement. As noted, the ALJ and BRB held that the LHWCA, § 914(j), provides for reimbursement of those payments only if unpaid installments of LHWCA compensation remain owing. Section 914(j) states that "[i]f the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." The only other two sections of the LHWCA which provide for recovery of overpayments are § 922, which provides for such recovery after a final award is modified, but only out of unpaid LHWCA compensation, and § 908(j), which provides for an employer's recovery of compensation, but again only out of compensation payable, for periods during which a disabled employee fails to report, omits, or understates, employment-related earnings. None of the three sections provides for the employer recovering overpayments directly from the employee, as sought here; such recovery, under the LHWCA, can only be an offset against future LHWCA compensation.

Ceres Gulf contends that Cooper's claim that resulted in the advance payments was fraudulent. The ALJ and BRB did not so hold. But, in any event, the LHWCA, addresses fraudulent claims in ways different from that urged by Ceres Gulf. First, it provides for a fine or imprisonment for "[a]ny claimant ... who knowingly and willfully makes a false statement or representation for the purpose of obtaining a benefit or payment under" the LHWCA, § 931(a)(1). The penalty does not include recovery of payments obtained as a result of the false statement or representation. Second, an

13

employer may "discharge or refus[e] to employ a person who has been adjudicated to have filed a fraudulent claim", § 948a.  These were part of the amendments in 1984 to the LHWCA to address a perceived problem of claimant fraud.  *See* S. Rep. No. 81, 98th Cong., 1st Sess. 20-21, 37 (1983); 128 Cong. Rec. 18018-18019 (daily ed. July 27, 1982) (statement of Sen. Nunn); 127 Cong. Rec. 9835-9836 (daily ed. May 14, 1981) (statement of Sen. Nunn).  At that time, Congress declined to provide for recovery of benefits to combat such fraud, other than by the established offset method against LHWCA payments owing.  *See* H. Rep. No. 570, 98th Cong., 1st Sess. pt. 1 at 18 (1983), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2751 (if the employee failed to report earnings, § 908(j), "[t]he Committee does not contemplate that the employer could bring a cause of action to recover compensation paid in the past").

"Prior to the 1972 amendments to the Act, compensation orders were directly reviewable by the district court.  However, in 1972 Congress created the BRB to hear all direct appeals of compensation orders.  This replaced the district court's exercise of that function." **In re Claim**, 889 F.2d at 629 (citations omitted).  The LHWCA still provides several bases for filing suit in district court; but, as Ceres Gulf concedes, recovery of overpayments is not one of them.[13]

---

[13]     For example, "if an employer fails to secure payment of compensation as required by [the LHWCA], an injured employee ... may ... maintain an action at law or in admiralty for damages on account of such injury", § 905(a); the employer may sue a third party to recover certain benefits if the "employee was injured through the fault or negligence of [that] third party not in the same employ", § 907(h); if the employer defaults in payment of

14

As discussed, compensation orders may be reviewed by the BRB and courts of appeals, § 921(b) and (c); orders making an award may be enforced through the district courts, § 921(d). Of special significance, § 921(e) provides that "[p]roceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section [§ 921] and section 918 ...." Arguably, as discussed *infra*, the action filed by Ceres Gulf was for the purpose of "suspending" or "setting aside" a "compensation order ... rejecting a claim" and, therefore, prohibited by the LHWCA, because it was a proceeding not included within the statutory scheme.

1.

As noted, Ceres Gulf concedes that the LHWCA does not provide an employer with a right to recover advance payments wrongfully paid, such as through fraud, when no LHWCA compensation is owed. The same conclusion was reached recently in **Stevedoring Services of America, Inc. v. Eggert**, 953 F.2d 552 (9th Cir. 1992), where the Ninth Circuit reversed the decision by the district court in Washington State that was cited for support by the district court in this action. It held, consistent with the Director's position here, that the district court lacked jurisdiction to consider a

_____

compensation due under an award, the employee, following administrative proceedings, may obtain a default judgment in district court, § 918(a); and likewise, and as noted earlier, upon failure "to comply with a compensation order making an award, that has become final", the employee or deputy commissioner making the order may apply for enforcement of the order in district court, § 921(d).

15

claim under the LHWCA by an employer to recover payments, although wrongfully paid, when no future compensation payments were owed.

The Ninth Circuit examined various LHWCA provisions advanced as bases for federal court jurisdiction. After determining that 33 U.S.C. §§ 918, 921 and 927 did not confer jurisdiction,[14] it noted that § 921(e) requires that "proceedings for suspending, setting aside, or enforcing a compensation order ... not be instituted otherwise than as provided" by §§ 918 and 921. 953 F.2d at 555.

Next, the court rejected the employer's contention that an implied cause of action existed under the LHWCA, under either § 914(j) (employer entitled to reimbursement for advance payments out of unpaid compensation due), § 922 (review of ALJ order because of mistake or change in conditions), or § 908(j) (compensation paid where employee misstates earnings recoverable through compensation payable). Its analysis is similar to our basis, presented *infra*, for finding jurisdiction lacking under 28 U.S.C. § 1331. It held that:

> Congress did not intend to permit an employer a federal cause of action against a claimant for repayment of alleged overpayments of compensation. Although Congress did not expressly preclude an employer action for repayment, its intent on this issue is understood by the express provisions we have examined. We will not rewrite or engraft new remedies upon the provisions Congress has affirmatively and specifically enacted. The

---

[14]    The court rejected jurisdiction based on §§ 921(d) and 918(a) because "[b]oth of these provisions concern employers who are in default in payment of a compensation award and are thus inapplicable here." 953 F.2d at 555. It likewise held that § 927(b) did not confer jurisdiction, because the employer's complaint "was not an action to enforce compliance with a direct order of the ALJ". *Id.*

16

> district court erred in holding that [the employer] had an implied remedy under the LHWCA. Because [the employer's] federal claims for recoupment are without merit, the district court lacked jurisdiction to entertain them.

953 F.2d at 557.

Thus, as Ceres Gulf concedes, and as the Ninth Circuit held in **Eggert**, the LHWCA does not vest jurisdiction in the district court for an employer's action to recover compensation wrongfully received.[15]

2.

Ceres Gulf contends, instead, that the district court had jurisdiction under the general federal question statute, 28 U.S.C. § 1331, which provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[16] It

---

[15] Prior Fifth Circuit cases have assumed or implicitly held an employer could not recover overpaid benefits except as offsets against future payments. See **Phillips v. Marine Concrete Structures, Inc.**, 877 F.2d 1231, 1234 (5th Cir. 1989), *vacated*, 877 F.2d at 1237, *rev'd on other grounds*, 895 F.2d 1033 (5th Cir. 1990) (en banc); **Rivere v. Offshore Painting Contractors**, 872 F.2d 1187, 1191 (5th Cir. 1989); **Henry v. Gentry Plumbing & Heating Co.**, 704 F.2d 863, 865 (5th Cir. 1983).

[16] Contrary to Fed. R. App. P. 28, Ceres Gulf, at oral argument and in a subsequent letter brief, advanced for the first time on appeal the theory that jurisdiction also exists under admiralty and maritime law, pursuant to 28 U.S.C. § 1333. It is more than well-established that legal theories may not be raised on appeal in this fashion; we decline to consider this contention. Because of our limited jurisdiction, we must always be vigilant to ensure that we have subject matter jurisdiction, addressing the issue *sua sponte* if need be. But, this discipline is separate from our declining to address untimely raised legal theories in support of that jurisdiction. We cannot allow such legal theories to crop up at any point during the appeal; it is not our role to exercise jurisdiction over any disputes that might possibly fall within our limited reach. Considering Ceres

17

maintains that this case arises under the federal common law of fraud and unjust enrichment; that the LHWCA does not prohibit this "equitable action for reimbursement". It does not assert that this form of action has been recognized by the federal courts. Rather, it asks that we create a new cause of action under federal common law, outside the LHWCA, citing *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404 (1969), where the Supreme Court found, outside the LHWCA, a right of subrogation by a stevedoring contractor against a shipowner for LHWCA compensation payments. As the Supreme Court noted:

> The exclusivity of the [LHWCA] statutory compensation remedy against the employer was designed to counterbalance the imposition of absolute liability; there is no comparable *quid pro quo* in the relationship between the employer and third persons. On the contrary, as we emphasized in *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, the Act is concerned only with the rights and obligations as between the stevedoring contractor and the employee or his representative. It does not affect independent relationships between the stevedoring contractor and the shipowner.

394 U.S. at 413. But here, of course, we are "concerned only with the rights and obligations as between the [employer] and the employee."

---

Gulf's belatedly asserted maritime jurisdiction theory would run afoul of the well established procedures for timely presentation of legal issues on appeal, in which all parties have the opportunity to brief and argue issues within the established time frame for doing so. This is not exalting form over substance; far from it. Instead, in light of numerous obvious factors, such as the skyrocketing cost of litigation, our burgeoning caseload, and the ever increasing demands on overstrained judicial resources, it is a necessity for the orderly and fair administration of justice.

18

We lack jurisdiction to even consider this asserted federal common law right. The LHWCA creates no remedy, enforceable in the district court, for an employer to recover overpayments. Moreover, the LHWCA is the only potential source for federal court jurisdiction in this case. But, § 1331 jurisdiction is unavailable where, as here, Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute. *See Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965) ("where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive"); *Compensation Dept. of Dist. Five, United Mine Workers of Am. v. Marshall*, 667 F.2d 336, 341 (3d Cir. 1981) (applying *Whitney* to the LHWCA).

As outlined, through the LHWCA Congress has provided a detailed scheme for presentation, payment, adjudication and review of claims covered by the LHWCA. Among other things, it empowers the deputy commissioner to order a hearing before an ALJ, § 919(c), and authorizes appeals of claim determinations to the BRB, § 921(b), with review of its orders in a court of appeals, § 921(c). And, the district courts have authority to enforce compensation orders making an award against employers, § 921(d). The LHWCA neither expressly, or impliedly, allows the action in issue. In fact, it is contrary to the statutory scheme. This case is not here on review of the BRB ruling. Ceres Gulf has avoided that statutorily prescribed method of review by filing a separate action

19

in the district court. The LHWCA provides, however, in § 921(e) that its method for deciding and reviewing claims is exclusive.

Accordingly, we lack jurisdiction to consider Ceres Gulf's federal common law theory. *See* ***Watson v. Massman Constr. Co.***, 850 F.2d 219, 224 & n.27 (5th Cir. 1988) (no jurisdiction to resolve question of entitlement to benefits under LHWCA because litigant did not comply with statutory administrative scheme and judicial review). *See also* ***Connors v. Amax Coal Co.***, 858 F.2d 1226 (7th Cir. 1988), concerning a claim for equitable reimbursement under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, which incorporates the LHWCA claim procedures. In rejecting an assertion that it had § 1331 jurisdiction stemming out of a federal common law right, the court stated:

> To establish a cause of action in district court under section 1331 the [plaintiffs] must show first that their action against [defendant] "arises under" ... federal common law and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere.

858 F.2d at 1229-30.[17] Restated, we lack jurisdiction because, under the facts of this case, § 1331 jurisdiction, if any, for this asserted right is preempted by the LHWCA.

Ceres Gulf contends, however, that it is not seeking review of the administrative adjudication; that, instead, it is seeking to enforce an administrative order or seeking a remedy that the

---

[17]    *See also* ***Owner-Operators Indep. Drivers' Ass'n of Am., Inc. v. Skinner***, 931 F.2d 582, 589 (9th Cir. 1991); ***Connors v. Oglebay Norton Co.***, 848 F.2d 84, 85 (6th Cir. 1988); ***Connors v. Tremont Mining Co.***, 835 F.2d 1028, 1029-30 (3d Cir. 1987).

20

federal courts, but not the agency, are competent to give; that the remedy it seeks is derived outside the LHWCA, so that its exclusive review provisions do not apply.

We disagree. As noted, the ALJ and BRB held -- and Ceres Gulf concedes -- that, under the LHWCA, it was not entitled to recovery. Ceres Gulf is attempting an impermissible end run around the LHWCA, seeking to replace review of the BRB determination with suit in district court. It is not seeking to enforce the agency rulings; it pursues a contrary result. It is seeking, in essence, to set aside the compensation order, which § 921(e) expressly prohibits being done except through the procedures established in §§ 921 and 918.

In sum, allowing this separate action would run counter not only to the express provisions of the LHWCA -- which, alone, ends the inquiry -- but also to the underlying purpose of the Act. To allow this separate action, we would have to ignore the compromise effected by the exclusivity aspects of the LHWCA, under which the employee is barred from suing the employer, in exchange for more prompt and certain, although possibly lower, recovery. The LHWCA precludes the employee's suit, yet Ceres Gulf seeks to hale the employee into federal court because of a claimed gap in the LHWCA, concerning recovery of wrongful advance payments.[18] The cure lies with Congress, not federal courts.

---

[18] One remedy against such payments is the employer's statutorily prescribed right to timely controvert -- a right Ceres Gulf did not exercise.

21

## III.

For the foregoing reasons, the order denying intervention and the judgment are **REVERSED** and this case is **REMANDED** with instructions to dismiss for lack of subject matter jurisdiction.

**REVERSED** and **REMANDED.**