150 F.3d 659
 135 Lab.Cas. P 33,694, 4 Wage & Hour Cas.2d
(BNA) 1289
 WESTERN ILLINOIS HOME HEALTH CARE, INC., et al., Plaintiffs-Appellants,
v.
Alexis HERMAN, Secretary of Labor, and John Fraser, Acting
Administrator, Wage and Hour Division, United
States Department of Labor, Defendants-Appellees.
 No. 97-1587.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 19, 1997.
Decided July 7, 1998.
As Corrected July 29, 1998.
 
 John C. Gilliland, II, Sarah M. Patton, The Law Offices of John C. Gilliland, II, Crestview Hills, KY, Elizabeth A. Zink-Pearson (argued), Pearson, Bernard & MacKelvie, Florence, KY, for Plaintiffs-Appellants.
 James A. Lewis (argued), Office of the United States Attorney, Springfield, IL, for Defendants-Appellees.
 Before POSNER, Chief Judge, MANION and DIANE P. WOOD, Circuit Judges.
 DIANE P. WOOD, Circuit Judge.
 
 
 1
 Administrative agencies make thousands, if not millions, of decisions every day, but only a small fraction of that massive output may be challenged immediately in a court. The question before us here is whether the Department of Labor, through an official in its Wage and Hour Division, issued a reviewable decision when the official sent a letter concluding that two companies owned by Barbara and Ron Byers should be characterized as a "joint employer" for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Following the recommendation of Magistrate Judge Robert J. Kaufman, Judge Mihm concluded that the letter did not amount to "final agency action," 5 U.S.C. § 704, suitable for review under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and he dismissed the case "with prejudice." (We find this a curious disposition for something that essentially relates to justiciability, but in light of our decision there is no need for us to address the point.) Although it is a close call, we find that under the test of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the plaintiffs' claim is justiciable now, and we remand the case to the district court for further proceedings.
 
 
 2
 * The Byers are the sole shareholders, directors, and officers of two companies, Western Illinois Home Health Care (WIHHC) and Western Illinois Managed Home Services (WIMHS), the plaintiffs here. After a former employee filed a complaint, the Wage and Hour Division of the Department of Labor (to which we refer for simplicity's sake as DOL) initiated an investigation to see if the Byers were complying with the FLSA. The investigation focused on whether the companies were paying their employees overtime rates, as required by law, and whether the Byers were manipulating their two corporations to avoid paying overtime.
 
 
 3
 WIHHC and WIMHS are both engaged in the provision of home health services, but they serve different clienteles. WIHHC is a Medicare and Medicaid certified home health agency, which is licensed to provide services in several counties in Illinois. Its principal place of business is in Monmouth, Illinois. WIMHS provides home health services to non-Medicare patients who have private insurance or some other source of funds available to them. Its office is twenty miles away from WIHHC's, in Galesburg, Illinois. The two entities have separate home health licenses, federal tax identification numbers, insurance coverage, and bank accounts.
 
 
 4
 The Byers' problems (or, more accurately, those of their companies) arose because there is some interchange of employees between the two entities. WIHHC does not maintain a large full-time staff of health care personnel, because its needs vary from month to month depending on the number of patients it is serving at any given time. In fact, WIHHC warns its employees that it cannot guarantee them a full-time (i.e. 40 hours per week) job. They may, however, apply to work with WIMHS in Galesburg if they want more hours of work. Some employees took WIHHC up on the invitation, which led to the DOL investigation here.
 
 
 5
 Neither the initial DOL investigator, Thomas McMullen, nor his superior, Assistant Deputy Director Dean A. Campbell, seems to have found any violations of the overtime laws after aggregating employees' hours, but they concluded that WIHHC and WIMHS were "joint employers" of employees for purposes of the FLSA, 29 U.S.C. § 207. Campbell communicated this view in a letter to the lawyer representing the Byers and their corporations, which we reproduce in full because it is the centerpiece of the jurisdictional question before us:
 
 Dear Ms. Zink-Pearson:
 
 6
 This is in further reference to our investigation of your client, Western Illinois Home Health Care, Inc. and Western Illinois Help at Home, Inc. [the predecessor entity to WIMHS], under the Fair Labor Standards Act and is in follow-up to our telephone conversation today.
 
 
 7
 You are advised that after reviewing the circumstances involved in this case I will be closing our investigation with no further action. I want to stress, however, that it is the Department of Labor's position that employees concurrently working for the two corporate entities must have their hours of work combined and be paid overtime when the total is over 40 hours in a week. At a minimum, a joint employment relationship exists in this situation. If your client fails to pay overtime in accordance with this enforcement position it does so at its own peril.
 
 
 8
 The Department of Labor has authority to conduct investigations as provided under section 11(a). It is not necessary for a complaint to be filed in order for such an investigation to be scheduled. As we discussed over the telephone, it is my intention to consider a follow-up investigation at some later date to determine whether your client is complying with the Act.
 
 
 9
 I would like to direct your attention to section 16(e) of the FLSA and Regulations, Part 578. As you will note, section 16(e) provides for the assessment of a civil money penalty for any repeated or willful violations of section 6 or 7, in an amount not to exceed $1,000 for each such violation. No penalty is being assessed as a result of this investigation. If at any time in the future your client is found to have violated the monetary provisions of the FLSA, it will be subject to such penalties.
 
 
 10
 The enclosed publications are provided for your reference. A complete copy of the FLSA is available upon request. If you have any questions about the investigation or about any aspect of the FLSA, please do not hesitate to contact me.
 
 
 11
 Sincerely,
 
 Dean A. Campbell
 Assistant District Director
 
 12
 (Emphasis in original.)
 
 
 13
 Upon receiving this letter, WIHHC and WIMHS filed suit in district court. As amended, their action invoked federal question jurisdiction and raised claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The amended complaint sought a declaration that the DOL interpretation of 29 C.F.R. § 791 (the joint employment regulation) was incorrect as applied to their case, a declaration that WIHHC and WIMHS were separate and distinct employers for purposes of the payment of overtime compensation under the FLSA, and an order restraining the DOL from enforcing § 791 in accordance with Assistant District Director Campbell's letter. The district court, relying on the part of the letter in which Campbell announced that DOL was closing its investigation and taking no action against the plaintiffs at that time, concluded that this was simply a decision not to prosecute and that the case was governed by Board of Trade of City of Chicago v. SEC, 883 F.2d 525 (7th Cir.1989). As a decision committed to agency discretion, it was not subject to judicial review. See id. at 529-30; 5 U.S.C. § 701(a)(2); Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Alternatively, the court concluded that the agency's decision with respect to the two companies' joint employer status was non-final and thus not ripe for judicial review. See Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 243 (10th Cir.1991); Taylor-Callahan- Coleman Counties v. Dole, 948 F.2d 953, 957-59 (5th Cir.1991).
 
 II
 
 14
 In order to decide whether the Campbell letter reflected nothing more than Assistant Director Campbell's casual musings, so subject to modification or prosecutorial whim that it was not something appropriate for judicial review, or on the contrary that it represented a DOL determination with immediate legal consequences for the plaintiff corporations, we must return to the language of the letter itself. Paragraph 2 of the letter unambiguously announces that the DOL has concluded that a joint employment relationship exists "in this situation"--that is, between WIHHC and WIMHS. Paragraph 2 also points out the consequence of that determination, which is that for employees working at both places, hours must be combined and overtime must be paid when the combined total exceeds 40 hours in a week. Paragraph 3 of the letter warns the plaintiffs that DOL will conduct a follow-up investigation to ensure that they are complying with the rule it has announced in paragraph 2. Last, in paragraph 4 Assistant Director Campbell indicates that WIHHC and WIMHS will be liable as "repeated or willful" offenders if they are found in the future to have violated the "monetary provisions" of the FLSA; they will not be treated as first offenders.
 
 
 15
 In Bennett v. Spear, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), the Supreme Court reviewed what it takes for an agency action to be "final," and thus judicially reviewable under 5 U.S.C. § 704:
 
 
 16
 As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."
 
 
 17
 Id. at 1168 (citations omitted). To similar effect, in Franklin v. Massachusetts, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), the Court recommended several factors to consider in determining whether action is "final," including "whether its impact 'is sufficiently direct and immediate' and has a 'direct effect on ... day-to-day business.' An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Id. at 796-97, 112 S.Ct. 2767, quoting Abbott Labs., 387 U.S. at 151-52, 87 S.Ct. 1507 (omission in original). Finally, of course, for many years courts have followed a pragmatic, practical test for the finality of administrative decisions. Abbott Labs, 387 U.S. at 149, 87 S.Ct. 1507; FTC v. Standard Oil Co., 449 U.S. 232, 239-40, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); Board of Trade, 883 F.2d at 530; Taylor-Callahan, 948 F.2d at 957.
 
 
 18
 This court faced an analogous problem in First National Bank of Chicago v. Comptroller, 956 F.2d 1360 (7th Cir.1992), in which the question was whether a letter ruling from the Comptroller of the Currency was reviewable. The bank had asked the Comptroller for an interpretation of a regulation, so that it could disperse money from a trust in a particular way. The Comptroller responded with a letter in which he stated that the bank was not permitted to make the desired distribution. When the bank tried to challenge that ruling in a lawsuit, we found that there was a final, reviewable agency decision:
 
 
 19
 [The question is] whether the Comptroller's letter ruling is final agency action and therefore challengeable in a judicial review proceeding, or a mere advisory opinion, offering the bank the Comptroller's interpretation of his regulations but leaving the bank free to go ahead with its restructuring of the fund and to face the consequences, if any, of its defiance. A letter doesn't look much like final formal agency action.... In the present case, however, the bank requested not advice, perhaps on a purely hypothetical course of action, but permission to go forward with a concrete proposal that it had already put to the fund participants for their approval.... The Comptroller turned the bank down. He did not ... offer a merely tentative view. Nor did he address hypothetical possibilities, or request additional information before making a definitive ruling.
 
 
 20
 Id. at 1364 (citations omitted).
 
 
 21
 Applying this approach to the letter from Assistant District Director Campbell, we conclude that the DOL's decision characterizing WIHHC and WIMHS as joint employers was final and reviewable agency action. With respect to this question, Campbell's letter is not at all tentative or interlocutory in nature. He uses a simple, declarative sentence: "At a minimum, a joint employment relationship exists in this case." That is the agency's "enforcement position" insofar as Campbell had authority to determine it (a point to which we return shortly). Second, this is a determination that establishes the legal obligation of WIHHC and WIMHS to cumulate the time their respective employees spend at each company, for purposes of computing entitlements to overtime wages. Legal consequences flow from it, both with respect to their obligations to their employees and with respect to their vulnerability to penalties should they disregard the DOL's determination. There is nothing hypothetical or tentative about this letter. To the contrary, Campbell threatened a follow-up investigation to confirm that WIHHC and WIMHS were aggregating hours. More than that, he warned that WIHHC and WIMHS would be treated either as recidivists or as willful violators if they failed in the future to comply with the legal ruling contained in the letter, thus subjecting them to penalties under 29 U.S.C. § 216(e). Cf. Board of Trade, 883 F.2d at 530 (" 'Finality' is a practical concept, and if the [agency] had put the [plaintiffs] in jeopardy should they neglect to dance to its tune, even a decision of the staff might be 'final' action."). As a result of the DOL determination in Campbell's letter, then, WIHHC and WIMHS face steeper penalties for future violations than they would otherwise have risked. This is a direct effect on the two companies sufficient to make the letter ruling final for purposes of judicial review.
 
 
 22
 The only factor that might give one pause is that Campbell himself is obviously a subordinate official at the DOL, and the Supreme Court in Franklin indicated that this might suggest tentativeness or lack of finality. Nevertheless, the fact that the Administrator of the Wage and Hour Division, or the Secretary of Labor herself, did not sign the letter is not dispositive. What is important is the chain of delegated powers within the Department, because that is what determines whether or not Campbell had the authority to make a decision binding on the recipient of his letter. Here, the Department's regulations state that notice "through a responsible official of the Wage and Hour Division" is enough to allow imposition of a penalty for future violations. See 29 C.F.R. § 578.3(b)(1). At least at this preliminary stage of the proceeding, Campbell appears to be such an official, and DOL did not argue otherwise. Furthermore, at oral argument DOL's lawyer did not claim that Campbell had no authority to send the letter or to communicate the Wage and Hour Division's decision to WIHHC and WIMHS, nor could he point us to any internal method by which Campbell's letter ruling could be appealed. Indeed, DOL never argued that WIHHC and WIMHS should have appealed this ruling within the Department, and so it has waived any argument based on a failure to exhaust administrative remedies. Most tellingly, DOL's lawyer refused at oral argument to disavow DOL's ability to use this letter as justification for future recidivism penalties. Under all the circumstances, we are satisfied that Campbell's relatively low position within the Department as a whole does not deprive the decision of finality.
 
 
 23
 The cases on which the government relies, such as Taylor-Callahan-Coleman Counties v. Dole, 948 F.2d 953 (5th Cir.1991), do not require a different result. The critical difference between the informal advisory opinion at issue in Taylor-Callahan and the one we have here is the absence there of immediate legal consequences for the regulated party. In Taylor-Callahan, one probation department was trying to challenge two advisory opinions issued to other probation departments; WIHHC and WIMHS, in contrast, are contesting a letter expressing a legal conclusion about their own status. It is even unclear whether the probation departments in Taylor-Callahan that had requested those advisory opinions would have been entitled to seek judicial review, since the opinions at issue did not purport to establish any legal consequences for disregarding the agency's position. See Taylor-Callahan, 948 F.2d at 957; Bennett, 117 S.Ct. at 1168. Similarly, in Board of Trade v. SEC, 883 F.2d 525 (7th Cir.1989), the case on which the district court principally relied, third parties were trying to challenge a no-action letter that the SEC had issued. The challenge was thus not only to the determination of a third party's rights; it was also a challenge to the SEC's prosecutorial discretion, unreviewable under 5 U.S.C. § 701(a)(2) and Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In its decision to dismiss, this court relied primarily on the SEC's prosecutorial discretion, rather than on the lack of final agency action. Board of Trade, 883 F.2d at 530. Finally, the letter in Board of Trade explicitly stated that it "should not be understood to express any legal conclusions regarding the applicability of statutory or regulatory provisions of the federal securities laws." Id. This stands in marked contrast to Campbell's determination that a "joint employment relationship exists" between WIHHC and WIMHS, a conclusion of law under 29 C.F.R. § 791 which the plaintiff corporations were free to ignore only "at [their] own peril."
 
 
 24
 We therefore conclude that the DOL's ruling with respect to the status of WIHHC and WIMHS as a "joint employer" was final and reviewable. We REVERSE the district court's decision dismissing the case for lack of jurisdiction and REMAND for further proceedings.