MEDIA GENERAL OPERATIONS
INC., Plaintiff,

v.

Alexis M. HERMAN, Secretary of
Labor, United States Department
of Labor, Defendants.

No. 400CV184.

United States District Court,
S.D. Georgia,
Savannah Division.

March 27, 2001.

Paul W. Painter, Jr., Ellis, Painter, Rat-
terree & Bart, LLP, Savannah, GA, Steven
David Brown, James Vincent Meath, David
Christopher Burton, Sean Michae Gibbons,
Williams, Mullen, Clark & Dobbins, Rich-
mond, VA, for plaintiff.

Edmund A. Booth, Jr., U.S. Attorney's
Office, Savannah, GA, for defendant.

1. Media General also brings this action under
the Declaratory Judgment Act (DJA), 28
U.S.C. § 2201 *et. seq.,* the Administrative Pro-
cedure Act (APA), 5 U.S.C. § 701 *et. seq.,* and
28 U.S.C. § 1331. Doc. # 1 ¶ 8.

## ORDER

EDENFIELD, District Judge.

## I. *INTRODUCTION*

In this Fair Labor Standards Act
(FLSA), 29 U.S.C. § 201 *et. seq.,* case,[1]
plaintiff Media General Operations Inc.
(Media General), seeks, *inter alia,* a de-
claratory judgment that its television re-
porters at WSAV Television 3 in Savan-
nah, Georgia are exempt from the FLSA's
overtime and record keeping require-
ments. Doc. # 1.

The Secretary of the Department of La-
bor ("DOL") moves to dismiss under
F.R.Civ.P. 12(b)(1) for lack of subject mat-
ter jurisdiction. Doc. # 15. As discussed
in this Court's 12/15/00 Order, the parties
quarrel over whether a DOL investigator's
determination that Media General is in
violation of the FLSA constitutes "final
agency action," thus subjecting it to judi-
cial review. Doc. # 24 at 2; *see* 5 U.S.C.
§ 704. "If the DOL clarifies that Media
General faces no non-compliance conse-
quences pending further *administrative*
review," this Court noted, then it would
"be inclined to grant the DOL's dismissal
motion." Doc. # 24 at 3 (emphasis origi-
nal).

## II. *STANDARD OF REVIEW*

■ "A defendant may attack subject
matter jurisdiction in two different ways—
facially and factually." *McMaster v. U.S.,*
177 F.3d 936, 940 (11th Cir.1999) (cite and
quotes omitted). The DOL factually at-
tacks subject matter jurisdiction because it
"challenge[s] the existence of subject mat-
ter jurisdiction in fact, irrespective of the
pleadings." *McMaster,* 177 F.3d at 940
(cite and quotes omitted); *see Miccosukee
Tribe of Indians of Florida v. EPA,* 105

F.3d 599, 603 (11th Cir.1997) (administrative agency's motion to dismiss constituted a factual attack).

■ The issue of fact here is whether the DOL investigator's determination constitutes "final agency action." In undertaking this inquiry, the Court may consider "matters outside the pleadings, such as testimony and affidavits." *McMaster*, 177 F.3d at 940. Media General "has the burden of proving that jurisdiction does in fact exist." *Dillard v. Jones*, 89 F.Supp.2d 1362, 1368 (N.D.Ga.2000) (defendant's challenge to court's jurisdiction on grounds that plaintiff had not satisfied the administrative exhaustion requirement constituted a factual attack for which plaintiff carried the burden of proving jurisdiction). But, "[n]o presumptive truthfulness attaches to [its] allegations, and the existence of disputed material facts will not preclude th[is] [Court] from evaluating for itself the merits of jurisdictional claims." *McMaster*, 177 F.3d at 940 (cites and quotes omitted).

## III. *JURISDICTION*

The DOL correctly points out that the FLSA does not provide Media General with a cause of action, and thus does not supply subject matter jurisdiction. Doc. # 15 at 5. Nor does the DJA, 28 U.S.C. § 2201, create an *independent* basis for jurisdiction or waive sovereign immunity. *See Circuit City Stores, Inc. v. EEOC*, 75 F.Supp.2d 491, 504 (E.D.Va.1999).

### A. Administrative Procedure Act

■ The APA, however, waives the government's sovereign immunity, 5 U.S.C. § 702, and provides subject matter jurisdiction in conjunction with 28 U.S.C. § 1331 over "final agency action." 5 U.S.C. § 704; *see Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152 (5th Cir. 1998) (the APA does not create an independent grant of jurisdiction to bring suit but § 702 of the APA can create a cause of action for which jurisdiction exists under the general federal question statute, 28 U.S.C. § 1331).[2]

The APA thus provides the procedural framework for private suits challenging federal agency action if the party has "suffered legal wrong," 5 U.S.C. § 702, by a "final agency action." *Id.* § 704; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action'" and "the party seeking review under § 702 must [also] show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute'"); *Owner Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*, 931 F.2d 582, 585 (9th Cir.1991) ("5 U.S.C. § 703, prescribes the general judicial review pro-

---

**2.** *See also Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1286 (5th Cir.1997) (Although National Park Service organic statute and Padre Island National Seashore Enabling Legislation did not provide directly for judicial review of National Park Service regulations, and neither statute created private right of action, owner of mineral estate under park could challenge Service's authority under the APA and thereby trigger federal question jurisdiction under § 1331); *NAACP v. Secretary of Housing &*

*Urban Dev.*, 817 F.2d 149, 152 (1st Cir.1987) ("federal action is nearly always reviewable for conformity with statutory obligations without any separate statutory 'private right of action'"); *Borg–Warner Protective Serv. Corp. v. EEOC*, 81 F.Supp.2d 20, 25 n. 2 (D.D.C.2000) ("jurisdiction over APA challenges to federal agency action is vested in district courts unless a preclusion of review statute ... specifically bars judicial review in this district court").

cedure for parties challenging agency actions .... [for which] review may be had in federal district court under its general federal question jurisdiction").

The·APA's waiver of sovereign immunity under 5 U.S.C. § 702 applies to suits for declaratory and injunctive relief. *See Rothe Dev. Corp. v. U.S. Dep't of Defense,* 194 F.3d 622, 624 (5th Cir.1999) (§ 702 waives immunity for declaratory and injunctive claims); *U.S. v. Vazquez,* 145 F.3d 74 (2nd Cir.1998) (same); *A.E. Finley & Assocs. v. U.S.,* 898 F.2d 1165, 1167 (6th Cir.1990) (general waiver under § 702 applies to all actions for nonmonetary relief under 28 U.S.C. § 1331; *Hodges v. Shalala,* 121 F.Supp.2d 854, 866–67 (D.S.C.2000) ("The waiver [of sovereign immunity under § 702] is not limited to those suits that are brought under the [APA]" such that sovereign immunity did not bar claims for declaratory and injunctive relief).

### 1. § 701(a) Preclusion

Section 702 review, however, is unavailable to the extent that the FLSA "preclude[s] judicial review." 5 U.S.C. § 701(a)(1); *Block v. Comm. Nutrition Inst.,* 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984); *Universal Health Serv. of McAllen, Inc. v. Sullivan,* 770 F.Supp. 704, 709–10 (D.D.C.1991) ("The APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action,' [5 U.S.C.] § 702, but withdraws that cause of action to the extent that the relevant statute precludes judicial review"). The inquiry in this regard is whether the FLSA precludes judicial review of administrative action by an employer. *See Block,* 467 U.S. at 345, 104 S.Ct. 2450.

■ The DOL attempts a preclusion argument by asserting that the Secretary of Labor has the exclusive right to bring an injunctive relief action under the FLSA. Doc. # 15 at 5 (citing *Powell v. State of Fla.,* 132 F.3d 677, 678 (11th Cir.1998)). In doing so, it correctly asserts that neither of the judicial review provisions of the FLSA (29 U.S.C. §§ 216, 217) authorize a private right to seek injunctive relief. Doc. # 15 at 5.

This led the *Powell* court to conclude that "the right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor." 132 F.3d at 678. But that was in the context of *enforcing* the FLSA's provisions, not in the context of *challenging* the DOL's actions. *NAACP,* 817 F.2d at 152 ("The 'private right of action' issue is whether Congress meant to give an injured person a right himself to enforce the federal statute directly against the nonfederal person or whether the injured person can do no more than ask the federal government to enforce the statute").

■ It is the latter context in which the APA, in conjunction with § 1331, affords subject matter jurisdiction for Media General's injunctive and declaratory relief claims. Thus, *Powell* does not preclude Media General from seeking judicial review under the APA's procedural framework.

Nor does the DOL make any other arguments that the FLSA bars such review. *See Universal Health Serv. of McAllen, Inc.,* 770 F.Supp. at 712 ("The Court finds that the Secretary has failed to overcome the strong presumption in favor of judicial review of agency actions because he has failed to show by clear and convincing evidence that the statutory language, the legislative history, or the statutory scheme of the Act evinces a clearly discernible congressional intent to preclude judicial review"); *see also Block,* 467 U.S. at 345, 104 S.Ct. 2450 ("Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the struc-

ture of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved").

### 2. "Final Agency Action"

■■ But still, for this Court to maintain subject matter jurisdiction the case must be ripe for review. *See Digital Properties Inc. v. City of Plantation,* 121 F.3d 586, 591 (11th Cir.1997). Where the plaintiff challenges agency action, ripeness essentially turns on whether there has been "final agency action" within the meaning of APA § 704. *See e.g., Ohio Forestry Ass'n Inc. v. Sierra Club,* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (identifying three considerations: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether courts would benefit from further factual development of the issues presented); *Natural Resources Defense Council, Inc. v. Thomas,* 845 F.2d 1088, 1091 (D.C.Cir.1988) ("[t]he questions of ripeness and final agency action are inextricably intertwined").

■ To be final, two requirements must be satisfied: (1) the action must mark the "consummation" of the agency's decisonmaking process; and (2) the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Franklin v. Mass.,* 505 U.S. 788, 796–97, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ("[t]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties").

■ Because finality is assessed in a "pragmatic way," *FTC v. Standard Oil Co.,* 449 U.S. 232, 239, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), whether an agency's action is final primarily depends on the facts of a specific case. *Compare Western Illinois Home Health Care, Inc. v. Herman,* 150 F.3d 659 (7th Cir.1998) (Letter from assistant district director of Wage and Hour Division of DOL was final, reviewable agency action, despite fact that letter came from subordinate official; letter was not tentative, declared that joint relationship existed between two employers, threatened follow-up investigation to confirm that employers were aggregating their hours, and warned that employers would be treated as recidivists or willful violators if they did not comply with legal ruling in letter); *with Taylor–Callahan–Coleman Counties District Adult Probation Dep't v. Dole,* 948 F.2d 953, 957 (5th Cir.1991) (Advisory opinions issued by a DOL Wage and Hour Administrator were not "final agency actions" subject to judicial review, as they did not set out any definitive statement of DOL policy, did not have status of law with penalties for noncompliance, and were neither final nor binding on employers or employees).

In certain instances, for example, pre-enforcement review may be appropriate. *See Western Illinois,* 150 F.3d at 662; *Student Loan Marketing Ass'n v. Riley,* 104 F.3d 397, 406–07 (D.C.Cir.1997) (Department of Education's letters interpreting statute imposing offset fee on principal amount of each student loan held by Sallie Mae were final, for purposes of judicial review, as Secretary of Education endorsed interpretation set forth in letters, position was stated unequivocally, and interpretation was product of agency deliberation informed by Sallie Mae's position); *Hawaii Newspaper Agency v. Bronster,* 103 F.3d 742, 747 (9th Cir.1996) (issue was ripe for decision because threat of enforcement was imminent and process of complying would cause significant injury); *Nat'l Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 704 (D.C.Cir.1971)

("We find no threshold obstacle that requires dismissal of the action before us merely because it seeks judicial review of the 'agency action' of interpretation prior to the institution of an agency action for enforcement"); *Herman v. Excel Corp.*, 37 F.Supp.2d 1117, 1122 (C.D.Ill.1999); *but see Taylor*, 948 F.2d at 959 (Public employer had adequate remedy at law for contesting DOL's interpretation of provisions of FLSA, and could not obtain declaratory judgment regarding validity of advisory opinions issued by the DOL as regards application of FLSA to public employees; public employer could refuse to make certain payments to its employees and challenge DOL's interpretation that employees were subject to FLSA in defense of FLSA enforcement action).

But the mere *initiation* of an investigation does not constitute final agency action. *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994); *Standard Oil Co.*, 449 U.S. at 239–45, 101 S.Ct. 488; *see also Abbs v. Sullivan*, 963 F.2d 918, 927 (7th Cir.1992) ("A challenge to administrative action, whether the action is denominated a rule or a complaint, falls outside the grant of jurisdiction of section 10(c) of the [APA] when the only harm the challenger seeks to avert is the inconvenience of having to go through the administrative process before obtaining a definitive declaration of his legal rights").

### B. Declaratory Judgment Act

The DJA, 28 U.S.C. § 2201, also provides federal question jurisdiction. Although the DJA is not an independent source of subject matter jurisdiction, *GNB Battery Technologies Inc. v. Gould Inc.*, 65 F.3d 615, 619 (7th Cir.1995), "in declaratory judgment actions, federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant." *Borg–Warner*, 81 F.Supp.2d at 28 (cite and quotes omitted). Had the DOL here brought an enforcement action

against Media General under the FLSA, this Court would have had federal question jurisdiction; therefore, it has federal question jurisdiction in this case.

Nonetheless, Media General still must satisfy the ripeness requirement to have standing. *See Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir.2001) (concurrence/dissent) ("In determining whether plaintiffs have standing to bring their claim pursuant to the [DJA,] the basic inquiry is whether there exists, under the facts alleged, a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (cite and quotes omitted). This then implicates the above "finality" inquiry. *See* 12 Moore's Fed. Prac. § 57.23 (2000).

### IV. BACKGROUND

DOL investigator Ronda Berrien investigated WSAV for wage and overtime violations with respect to its television reporters. Doc. # 1 at 4. Berrien found Media General in violation and orally communicated her determination to Media General. Doc. # 18 exh. A ¶¶ 8–9; # 15 exh. A ¶¶ 7–8. The evidence conflicts as to what was said during these conversations. *Id.*

Media General's counsel Stephen Brown avers that Berrien (during two separate phone calls) informed him "that [the] DOL's determination was a final decision and it could not be appealed." Doc. # 18 exh. A ¶¶ 8–9; *see id.* exh. B (Letter from Brown to Berrien confirming phone conversations).

Berrien, however, denies this. Doc. # 15 exh. A ¶ 8 (Berrien Aff.) ("I never represented to Mr. Brown or the Employer that my findings represented the final decision of the Department of Labor"). Rather, she avers that she "responded that [her] findings would not change, but that

[she] would forward the file ... to [her] supervisor Assistant District Director ['ADD'] Jeffrey Genkos ... [who] would review the investigation file and draw his own conclusion about whether WSAV was in compliance with the FLSA." Doc. # 15 exh. A ¶ 7.

But regardless of where the truth lies, the bottom line is that "if the DOL's procedures call for further administrative review, then Berrien's determination lacks finality unless Media General can show sufficient 'hardship' " (*i.e.* direct effect on day to day business). Doc. # 24 at 4 (12/15/00 Order). Thus, the Court will analyze these facts under the two-prong finality test articulated by the Supreme Court in *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154, while taking into account the practical consequences of investigator Berrien's determination.

## V. *ANALYSIS*

### A. Consummation of Decision-making Process

■ When analyzing the first prong of the two-prong finality test, "the issue is not what Berrien represented, but rather what the applicable procedures require." Doc. # 24 at 3 (citing *Office of Personnel Management v. Richmond,* 496 U.S. 414, 420, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). As the Court previously concluded: "[i]f the DOL clarifies that Media General faces no non-compliance consequences pending further *administrative* review, then this Court will be inclined to grant the DOL's dismissal motion." Doc. # 24 at 4 (emphasis original).

The DOL insists that there are further levels of review during which its determination may change. Doc. # 25 at 2; *id.* exh. A; # 15 exh. B; *see* 29 U.S.C. § 211 (delegating to the Secretary of Labor the authority to "investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any [FLSA] provision").

In support of this contention, it provides affidavit testimony of ADD Genkos, doc. # 15 exh. B, and of John McKeon, Deputy Regional Administrator ("Deputy") of the Wage and Hour Division for the Southeast Region. Doc. # 25 exh. A. McKeon is the second highest ranking official for enforcing compliance in the Southeast Region and thus Genkos, as an ADD, reports to him. *Id.* ¶¶ 3–4. Each aver that there are a number of levels of administrative review before the DOL's determination is final. Doc. # 15 exh. B ¶ 7; # 25 exh. A ¶ 9. According to McKeon,

[t]he standard operating procedure for handling Wage-hour investigations is that the Wage–Hour investigator ("Investigator") assigned to a particular investigation relays his or her conclusions to the employer to seek modification of the employer's business practices to come into compliance with the FLSA. If the employer disputes the factual and/or legal findings to the Investigator, the Investigator forwards the investigation file to the [ADD] for review.

Doc. # 25 exh. A ¶ 5; *see* # 15 exh. B ¶ 5. Genkos and McKeon then set out additional steps in the decision-making process. Doc. # 25 exh. A ¶¶ 6–7; # 15 exh. B ¶¶ 6–7.

■ Here, Media General clearly disputes Berrien's factual/legal findings. *See* doc. # 18. So, ADD Genkos should now have Media General's file before him for further review. In this regard, he submits that he has not yet had the opportunity to review it. Doc. # 15 exh. B ¶ 7. During this review, the DOL's determination may change. *Id.* As such, it hasn't completed its decision-making process.

This is true even if, as Media General contends, Berrien represented the contrary, since finality depends on the actual

effect of the agency's determination. *See Solar Turbines, Inc. v. Seif,* 879 F.2d 1073, 1080–81 (3rd Cir.1989) (even where administrative order is in the imperative and directs immediate compliance with its command, and even though there is an administrative communication presumably threatening civil and criminal liability upon noncompliance, pre-enforcement review is not available where in fact the administrative order will have no operative effect on the respondent); 2 AM.JUR.2D. *Admin.* § 488 (1999) ("Whether an agency action is final does not depend upon semantic characterizations, but on a careful evaluation of the separate but coordinate functions of the courts and administrative agencies and of the impact of the challenged action on the parties").[3]

Thus, the DOL has presented sufficient evidence to clarify that there are further levels of administrative review before it reaches a definitive determination. *See Shultz,* 443 F.2d at 700–01 ("In case of such an interlocutory ruling the process of administrative decision-making is still at a stage where the intervention of judicial review will disrupt the orderly process of adjudication") (cites and quotes omitted).

### B. Legal Consequences ("Hardship")

This Court also asked the DOL to clarify that Media General faces no non-compliance consequences pending such review. Doc. # 24 at 4. This goes to the second prong of the two-prong finality test (*i.e.* whether the present action is one from which legal consequences will flow). The DOL submits that (1) it has no mechanism to *demand* Media General's immediate compliance prior to initiating an enforcement action, doc. # 25 at 3; and (2) that

the *potential* for liquidated damages does not create an issue ripe for review. *Id.* at 4.

■ An enforcement action constitutes the principal means by which the DOL can force an employer's compliance. *See* 29 U.S.C. § 216(c); § 217. But, as discussed above, where the DOL's review process is complete, the imminent *threat* of an enforcement action may render an issue ripe for review. So the fact that the DOL must bring an enforcement action to "demand" compliance is not, by itself, dispositive of finality.

Here, Media General contends that it is faced with the type of dilemma which beckons immediate judicial review. Doc. # 18. Specifically, it states that "[i]f [it] ignores DOL's determination and continues to treat its television reporters as exempt employees, [it] is subject to a finding that it has engaged in a wilful violation of the FLSA, with the accordant liquidated damages." Doc. # 18 at 13.

■ The DOL responds that liquidated damages are not a penalty or sanction, but rather are part of the remedial statutory scheme, and are thus compensatory in nature. Doc. # 25 at 4 (citing 29 U.S.C. § 216(b)); *see Herman v. RSR Security Serv., Ltd.,* 172 F.3d 132, 143 (2nd Cir. 1999) ("Liquidated damages are not a penalty exacted by law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA"); *Reich v. Southern New Eng. Telecoms. Corp.,* 121 F.3d 58 (2nd Cir.1997); *Local 246 Workers Union v. Southern Cal. Edison Co.,* 83 F.3d 292 (9th Cir.1996); *but see Shultz,* 443 F.2d at 696 ("The [liquidated

---

**3.** Confusion in cases like this one (particularly when there is a dispute over an investigator's oral representations) perhaps could be avoided if the DOL would simply make it a "procedure" to provide written notice of the administrative decision-making/appeals process to preliminary (after the initial investigation) violators. This would undoubtedly help avoid any misrepresentations, or alleged misrepresentations, of DOL investigators to employers.

damages] provision inserted by Congress as a meaningful penalty and deterrent cannot be passed off by Government lawyers as a prospect of no substantial legal consequence").

The DOL also correctly asserts that liquidated damages are not awarded until the enforcement proceeding stage (if the DOL even initiates one) and, at that, are awarded at the court's discretion (*i.e.* if it finds the employer's violation to be willful). *See* 29 U.S.C. § 260 (court has discretion to decline an award of all or part of the liquidated damages if the employer shows that his action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation); *Taylor*, 948 F.2d at 959. In response, Media General points out the difficulty it will have in making a good faith showing in light of investigator Berrien's determination. Doc. # 18 at 7.

This is no doubt true. Yet, in *Taylor*, the Fifth Circuit rejected an argument similar to the one Media General makes here. There the court expressed little sympathy for the plaintiff-employer, an Adult Probation Department, rejecting its contention

> that if it ceases to pay overtime to its probation officers and an enforcement action ensures which it defends without success, the violation would be construed as willful because it is aware of the DOL's position regarding the District's probation officers. . . . While we issue no advisory opinion on any question of will-

fullness which may later arise, we do hold that the answer to that question cannot turn on ascribing any binding force to the opinion letters.

948 F.2d at 959.

▮▮▮▮ This Court agrees that the mere *potential* for future injury (thus injury that isn't imminent) in the form of liquidated damages is insufficient to render an issue ripe for review. *See Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). Were that sufficient grounds, then every employer's failure to comply with a DOL investigator's initial finding of non-compliance would support—upon that employer's reference to the mere *threat* of liquidated damages—disruptively intrusive judicial review.

Media General, however, insists that its case is similar to *Western Illinois*. Doc. # 18 at 6–8, 10. There, the Seventh Circuit found that a letter from an ADD that definitively stated the DOL's position and threatened civil penalties for non-compliance constituted final agency action. *Western Illinois*, 150 F.3d at 663. Unlike *Western Illinois*, however, the DOL here points to an internal "appeal" procedure. Doc. # 15 exh. B; # 25 exh. A; *compare Western Illinois*, 150 F.3d at 663 ("nor could [the DOL's lawyer] point us to any internal method by which [the ADD's] letter ruling could be appealed").

And, although Media General points to the possibility of civil monetary penalties,[4]

---

4. An employer may be subject to civil penalties (*see* 29 U.S.C. § 216(e); 29 C.F.R. § 578) governed by the administrative procedures in 29 C.F.R. § 580 *et. seq. See Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir.2000) ("Under the FLSA's enforcement provisions, employers violating the Act may be required to pay uncompensated overtime, together with civil penalties and liquidated damages"). Even if the DOL were to assess such penalties, there may still be an adminis-

trative exhaustion issue. *See* 29 C.F.R. § 580.6 (any person who takes exception with civil penalty determination shall request an administrative hearing); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 679 (1st Cir.1998) (DOL Administrative Review Board's erred in concluding that employer willfully violated FLSA's overtime provisions so court remanded to agency for further action under correct legal standard).

doc. # 18 at 10 n. 2, it acknowledges that the DOL has not assessed any such penalties here. *Id.* exh. B (Letter from Brown to Berrien) ("DOL did not assess any civil money penalties against WSAV").[5] Nor does Media General assert that the DOL investigator (or any other DOL official) has threatened to do so. *Compare Western Illinois,* 150 F.3d at 661 (ADD letter provided: "[i]f at any time in the future your client is found to have violated the monetary provisions of the FLSA, it will be subject to such penalties").

This case shares greater similarities with *Borg–Warner,* 81 F.Supp.2d 20. There the court concluded that the agency's action was a tentative step in the decision-making process because the agency was only considering whether to seek compensatory and punitive damages, it anticipated attempts at informal conciliation, and only if conciliation failed would its director advise the parties of enforcement alternatives. *Id.* at 26. For the same reasons, investigator Berrien's determination in this case must be deemed "tentative."

To conclude, there is no final agency action because the DOL has not yet completed its decision-making process and the threat of liquidated damages does not amount to "legal consequences" flowing from investigator Berrien's determination. The Court therefore must dismiss this case on ripeness grounds.

## VI. *CONCLUSION*

Accordingly, the Court **GRANTS** the Secretary of the Department of Labor's Motion to Dismiss (doc. # 15) and ***DISMISSES WITHOUT PREJUDICE*** plain-

tiff Media General's Complaint (doc. # 1) for lack of subject matter jurisdiction.

---

**5.** While Media General's *brief* suggests the contrary, doc. # 18 at 8 ("Ms. Berrien's Affidavit fails to mention any of the monetary sanctions she imposed upon Media General for the alleged FLSA violations"), that is not evidence.